UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WALDO TEOTIMO LOPEZ (A# 018-236-064),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY, et al.,

Respondents.

No.  1:26-cv-05401 DAD SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.      Factual and Procedural History**

Petitioner is a native and citizen of Cuba who has a final administrative order of removal ("FAOR") issued on November 1, 2007, pursuant to 8 U.S.C. § 1227(a)(1)(B) (visa overstay). ECF No. 5-1 at 2 (Form I-213).  He was subsequently released pursuant to an Order of Supervision ("OSUP") on an unknown date.[1]  On October 23, 2025, ICE issued Petitioner a Notice of Revocation of Release pursuant to 8 C.F.R. § 241.13 and detained him based on a

---

[1] Although the initial release date is not in the record, Petitioner's evidence of the prior release includes an OSUP log showing check-ins with Immigration and Customs Enforcement ("ICE") in 2023-2025. See ECF No. 1 at 15.

1

determination that "there is a significant likelihood of removal in the reasonably foreseeable future in your case."  ECF No. 5-2; see also ECF No. 5-3 (Warrant of Removal/Deportation, Oct. 23, 2025).  On November 6, 2025, ICE issued Petitioner a Notice of Removal to Mexico.  ECF No. 5-4.  ICE held Petitioner in Florida for about seven months until his transfer to the California City Detention Facility in June 2026.[2]  ECF No. 1 at 6.

Petitioner, proceeding pro se, filed the § 2241 petition on July 13, 2026, while in custody at the California City Detention Facility within this judicial district.  ECF No. 1.  The petition seeks the relief of immediate release on three grounds: (1) prolonged detention; (2) re-detention despite compliance with the OSUP; and (3) medical, emotional, and financial hardship to Petitioner, his U.S.-citizen wife, and their family.  Id. at 6-7.  Based on his allegations of prolonged detention and assertions of full compliance with his OSUP, the undersigned liberally construes the pro se petition as raising a due process challenge to the revocation of release without a showing of changed circumstances or violation of a condition of release.  See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (courts must "construe *pro se* habeas filings liberally").

In the response, Respondent states that immigration officials are attempting to remove Petitioner to Mexico, but he has refused to cooperate.  ECF No. 5.  According to Respondent, Petitioner has not expressed any fear of being removed to Mexico.  Id. at 2.  Respondent also claims that Petitioner's lack of cooperation has extended the removal period under 8 U.S.C. § 1231(a)(1)(C).  Id.  According to Respondent, Petitioner bears the burden of showing that there is good reason to believe that his removal from the United States is not reasonably foreseeable and has not met that burden here.  Id.  Should the Court grant the petition, Respondent maintains that the government should be permitted to place Petitioner on an OSUP.  Id.

---

[2]  Petitioner filed a § 2241 petition in the Middle District of Florida on February 3, 2026, but voluntarily dismissed it prior to a ruling on the merits after his transfer to California.  See Teotimo Lopez v. Warden, North Florida Detention Facility, et al., No. 3:26-cv-00216 WWB SJH, ECF No. 15 (M.D. Fla., Jul. 13, 2026) (order closing case pursuant to Fed. R. Civ. P. 41).  The undersigned takes judicial notice of the Middle District docket.  See Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

2

## II.    Immigration Detention Framework After a Final Order of Removal

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After this 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'"  Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]"  533 U.S. at 692.  In order to avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.  As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699.  In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention.  Id. at 701.  If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal.  Zadvydas, 533 U.S. at 701.  Where, as here, Petitioner was issued a final order of

3

removal, detained, and subsequently released and then re-detained, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed" pursuant to 8 C.F.R. § 241.13(i)(2). Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. June 20, 2025); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

**III.    Analysis**

The parties agree that Petitioner's November 1, 2007, order of removal is final.  This shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed.  Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Respondent argues that Petitioner's failure to consent to his third country removal to Mexico restarts the mandatory 90-day period of post removal detention pursuant to 8 U.S.C. § 1231(a)(1)(C).  DHS regulations allow the government to extend the removal period "if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal."  8 C.F.R. § 241.4(g)(1)(ii).  To do so, the government must issue a "Notice of Failure to Comply" prior to the expiration of the removal period.  Id.  Here, Respondent has not put forth any evidence of Petitioner's alleged noncooperation with identify verification, travel-document processing, or other required steps that would justify the government's extension of the § 1231(a)(1)(C) removal period and defeat Petitioner's claim. Therefore, the undersigned rejects Respondent's argument that Petitioner is still subject to mandatory detention pursuant to 8 U.S.C. § 1231(a)(1)(C).

Respondent also argues Petitioner bears the burden of demonstrating that his removal is

4

not foreseeable and has not met that burden. Respondent cites Judge Drozd's decision in Ruiz-Acosta v. Cent. Valley Annex, No. 1:26-CV-04371-DAD-JDP (HC), 2026 WL 1846727, at *2-3 (E.D. Cal. June 26, 2026), for support. The undersigned agrees Ruiz-Acosta is instructive, but it does not support Respondent's position. There, Judge Drozd noted that "[n]umerous courts have held . . . that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal." Ruiz-Acosta, 2026 WL 1846727, at *2 (E.D. Cal. June 26, 2026) (quoting Martinez v. Bondi, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025)). Judge Drozd found Zadvydas applied because it was unclear whether Petitioner was previously detained after he was ordered removed but before immigration officials encountered him in a county detention facility some eleven years later. Id. But here, it is undisputed that Petitioner was released on OSUP after his removal order and that ICE revoked that release on October 23, 2025. Accordingly, based on Petitioner's prior release on OSUP and re-detention in October 2025, the undersigned finds that the burden shifting framework of Zadvydas does not apply to this case.[3] See Vu, 2025 WL 3114341, at *5.

Therefore, Respondent has the burden of demonstrating that there is a significant likelihood that the Petitioner may be removed to Mexico pursuant to 8 C.F.R. § 241.13(i)(2) to justify his detention. Respondent asserts that Petitioner is subject to removal to the third country of Mexico and that the standing agreement between the United States and Mexico is "contingent upon the non-citizens consent to be removed to Mexico[.]" ECF No. 5 at 2 (quoting Ruiz-Acosta, 2026 WL 1846727, at *3). Because Respondent failed to provide the Court with a copy of any agreement with the government of Mexico to accept Petitioner, the undersigned finds that Respondent has not met their burden of demonstrating that there is a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future. "[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico

---

[3] Even if the Zadvydas framework applied, the undersigned finds that Petitioner's allegation that his eight-month detention has become prolonged would likely satisfy his burden. See Ruiz-Acosta, 2026 WL 1846727, at *2 (finding Petitioner met his initial burden because, inter alia, "his detention, which as of the date of his filing of the petition exceeded six months, has become impermissibly prolonged.") (citation omitted).

will accept [Petitioner] any time soon." Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025); see also Ruiz-Acosta, 2026 WL 1846727, at *3 (finding same where "respondents failed to indicate what steps the government has taken to effectuate petitioner's removal to Mexico or that Mexico is likely to accept this petitioner specifically."). Moreover, the fact that Respondent has not removed Petitioner to Mexico during the nine months that he has been detained further suggests that such removal is not significantly likely. Accordingly, Petitioner's detention is unlawful and he must be released. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable).

For all of these reasons, the undersigned recommends that the § 2241 petition be granted and that Respondent be ordered to release Petitioner immediately.[4] Respondent may place Petitioner on the same conditions of supervision in place prior to his re-detention on October 23, 2025. See Zadvydas, 533 U.S. at 700 (holding that a noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2.      Respondent be directed to immediately release Petitioner WALDO TEOTIMO LOPEZ (A# 018-236-064) on the same conditions of release in place at the time of his re-detention on October 23, 2025.

3.      Respondent be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

4.      Respondent be prohibited from re-detaining Petitioner without first complying with 8 U.S.C. § 241.13.

---

[4] In the interests of judicial economy, the undersigned finds it unnecessary to address the petition's specific allegations of hardship to Petitioner and his family.

5.     The Clerk of the Court be directed to:

    a.  Serve the California City Correctional Facility with a copy of any order of release; and

    b.  Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 24, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

7